UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ROGELIO DELGADO MORENO, | |
| Petitioner, | No. 23 CV 15736 |
| v. | Judge Thomas M. Durkin |
| ITZEL VIRIDIANA HERNANDEZ ESCAMILLA, | |
| Respondent. | |

## MEMORANDUM OPINION AND ORDER

Respondent traveled with her three minor children, J.H., A.H., and S.H., from Mexico to the United States in 2022. Petitioner seeks the return of his minor children to Mexico under the Hague Convention. The Court held hearings on July 11, 12, 15 and 16, 2024 and August 5 and 6, 2024. Respondent called Dr. Minal Giri to testify as an expert witness on July 16 and Dr. Paul Gillingham to testify as an expert witness on August 5. Petitioner reserved his objections during the hearing and now moves to exclude the opinions and testimony of Dr. Giri (R. 90) and Dr. Gillingham (R. 100). For the reasons stated below, Petitioner's motions are denied.

### Legal Standard

Under Federal Rule of Evidence 702, a witness may testify as an expert if their testimony: (1) will help the trier of fact to understand the evidence or to determine a fact in issue; (2) is based on sufficient facts or data; (3) is the product of reliable principles and methods; and (4) reflects a reliable application of the principles and methods to the facts of the case. Fed. R. Evid. 702. The expert's proponent has the

1

burden of proving by a preponderance of the evidence that the expert's testimony satisfies Rule 702. *Varlen Corp. v. Liberty Mut. Ins. Co.*, 924 F.3d 456, 459 (7th Cir. 2019). District courts have "broad latitude to determine how to evaluate expert testimony." *United States v. Hill*, 818 F.3d 289, 297 (7th Cir. 2016) (internal citations omitted). The Court's primary concern is "the validity of the methodology employed by an expert, not the quality of the data used in applying the methodology or the conclusions produced." *Manpower, Inc. v. Ins. Co. of Pa.*, 732 F.3d 796, 806 (7th Cir. 2013). "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 596 (1993).

## Analysis

### A. Dr. Giri

In her report and testimony, Dr. Giri diagnosed J.H. with post-traumatic stress disorder ("PTSD") and generalized anxiety disorder, A.H. with PTSD and generalized anxiety disorder, and S.H. with separation anxiety disorder. R. 94-1. She opined that if the three children were to return to Mexico, this would compound their existing trauma and exacerbate their disorders. *Id.*

First, Petitioner argues that Dr. Giri is not qualified to provide psychological diagnoses because she is neither a psychiatrist nor a psychologist. R. 90 at 3–6. But Dr. Giri is a licensed pediatrician with a medical degree from the University of Chicago. R. 94-1 at 31. She has been a practicing pediatrician for over twenty years, since she completed her residency at Lutheran General Hospital in 2002. *Id.* As part

of her training, she studied mental health and mental trauma experienced by children. R. 104, Tr. 512–14. And as part of her current practice, she sees and treats children suffering from mental health conditions such as anxiety and depression on a regular basis. *Id.* at 511.

Dr. Giri also has specific experience diagnosing and treating mental health and mental trauma for immigrant and refugee children. She completed a Global Mental Health Certificate at Harvard University in 2020 that focused on refugee trauma and recovery. *Id.* at 513. She has led workshops and trained other practitioners on working with refugee children who have suffered mental trauma. *Id.* at 514–15. Finally, she has written expert reports for approximately 35 prior cases, each of which involved the mental evaluation of children or adults seeking asylum and immigration relief. *Id.* at 506. For these reasons, Dr. Giri is qualified to provide psychological diagnoses for the three children.

Second, Petitioner challenges Dr. Giri's methodology. Primarily, Petitioner argues that Dr. Giri's methodology was flawed because she did not ask questions during the interviews about possible causes of the children's symptoms, beyond their father's alleged mistreatment. R. 90 at 11–14. But when interviewing the children, Dr. Giri followed the best practices that she has employed for over twenty years in interviewing and working with children. She testified that it is best to ask open-ended questions, and to allow the children to speak freely. *Id.* at 529–32. She further testified that it is best not to prod children with specific or complicated questions. *Id.* She also considered the possibility of malingering and based on the behavior of J.H.,

3

A.H., and S.H. during the interviews, she found them to be credible and she did not suspect malingering. *Id.* at 635. Dr. Giri's methodology was sound. She interviewed J.H., A.H., and S.H. consistent with her training as a pediatrician and reached conclusions based on those interviews.

Petitioner also argues that Dr. Giri's methodology was flawed because Dr. Giri relied on the Istanbul Protocol to guide the interview. R. 90 at 10–11. The Istanbul Protocol is a report that prescribes best practices for evaluating and documenting trauma. Tr. 528. Petitioner contends that Dr. Giri's reliance on the Istanbul Protocol implies a false assumption by Dr. Giri that the children had been traumatized. R. 90 at 11. All expert opinions come with assumptions and conclusions. Petitioner is free to disagree with Dr. Giri's assumptions and conclusions, but that does not render Dr. Giri's testimony inadmissible.

Petitioner also argues that Dr. Giri's methodology was flawed because the DSM-5 contains eight requirements for a PTSD diagnosis and Dr. Giri's reports for J.H. and A.H. enumerated just five of these requirements. R. 90 at 10. During her testimony, Dr. Giri admitted that her report was incomplete as to the three additional requirements, but she also explained her basis for believing that J.H. and A.H.'s symptoms still satisfied the DSM-5. Tr. 626–30. Petitioner's cross-examination was the appropriate remedy to attack the missing information rather than exclusion of Dr. Giri's entire report. *See Daubert*, 509 U.S. at 596.

Finally, Petitioner argues that Dr. Giri's methodology was flawed because Dr. Giri was not present when J.H. and A.H. filled out the GAD-7 and PHQ-9

questionnaires (screening tests for mental health conditions) and thus had no way to verify their answers. R. 90 at 8–9. Respondent admits that under ideal conditions, the questionnaires would be administered by Dr. Giri. R. 93 at 7. But Dr. Giri testified that her diagnoses were based on the interviews, not the questionnaires, and that the questionnaires merely confirmed the diagnoses she had already reached based on the interviews. Tr. 631–33. Though this argument may undercut the credibility of the test results, it does not undercut the admissibility of the diagnoses.

### B. Dr. Gillingham

Dr. Gillingham is a Professor in the History and Spanish & Portuguese Departments of Northwestern University and holds a Ph.D in the history of modern Mexico. R. 107-2. In his report and during his testimony, Dr. Gillingham offered an opinion on 1) the general level of violence in Respondent's hometown of Zitácuaro; 2) whether, based on his understanding of Mexico and Zitácuaro, Respondent's allegations of violence were credible; and 3) whether, based on his understanding of Mexico and Zitácuaro, Respondent would have been able to rely on the police or court system for recourse in her divorce case or for physical protection. R. 107-2 at 5.

First, Petitioner argues that Dr. Gillingham's report should be excluded because Dr. Gillingham failed to disclose all his sources. R. 100 at 3–6. Under the Federal Rules of Civil Procedure, "non-disclosed expert testimony is automatically excluded unless the failure was substantially justified or is harmless." *Tribble v. Evangelides*, 670 F.3d 753, 758 (7th Cir. 2012) (citations omitted). In determining

whether non-disclosure was harmless, courts consider, among other factors, the "ability of the [other] party to cure the prejudice." *Id.* at 760.

During the hearing, Dr. Gillingham testified that he had relied on three data points in forming his opinion about violence in Zitácuaro: homicide rates, internally displaced persons, and disappearances. Tr. 772. Dr. Gillingham's report disclosed homicide rates but failed to disclose anything about internally displaced persons or disappearances. R. 100 at 4. Overall, Dr. Gillingham's eighteen-page report contains thorough citations with fifty-eight footnotes. R. 107-2. And this particular non-disclosure does not warrant exclusion of the entire report. Petitioner's counsel effectively and extensively cross-examined Dr. Gillingham on this issue. *See* Tr. 772–85. Having witnessed and reviewed the cross-examination, the Court finds that Petitioner fully cured any prejudice stemming from the non-disclosure and thus that the non-disclosure was harmless.

Second, Petitioner argues that Dr. Gillingham's report and testimony should be excluded as unreliable and irrelevant because Dr. Gillingham failed to rely on facts specific to this case. R. 100 at 7–13. But Respondent fully admits that "it was not Dr. Gillingham's assignment or intent to assess the credibility of Respondent in the way that a fact-finder does who looks at and weighs all of the evidence proffered in a case." R. 107 at 9. "Rather, Dr. Gillingham's mission was to take the allegations made by Respondent and to assess their general plausibility given what he knows, as an expert, about the political and criminal situation in Zitácuaro." *Id.* Indeed, the nature of Dr. Gillingham's testimony is unusual. It is less of an analysis and more a sharing

6

of information about Zitácuaro. But there is nothing to suggest that the information provided by Dr. Gillingham is flawed. And his testimony is at least minimally relevant to provide the Court with context for Respondent's hometown of Zitácuaro. Whether the Court will ultimately afford Dr. Gillingham's testimony much weight in deciding this case is an open question. The testimony, however, is at least minimally relevant and thus admissible.

## Conclusion

For the foregoing reasons, Petitioner's motions to exclude the opinions and testimony of Dr. Giri (R. 90) and Dr. Gillingham (R. 100) are denied.

ENTERED:

_Thomas M Durkin_
_____
Honorable Thomas M. Durkin
United States District Judge

Dated: August 27, 2024